**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARCUS RAFFIELD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10758** |
| **Y&S MARINE, INC., JAMES SYLVE, AND SUPERIOR ENERGY SERVICES** | **SECTION "B" (1)** |

**ORDER AND REASONS**

Before the Court is Plaintiff's Motion to Sever and Set Trial of Maintenance and Cure Claim on an Expedited Basis (Rec. Doc. No. 22). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion to Sever and Set Trial of Maintenance and Cure Claim is **DENIED.**

***BACKGROUND***

Plaintiff Marcus Raffield filed suit on December 4, 2006, alleging that his claims arise pursuant to the Jones Act, 46 U.S.C. § 688 and/or the general maritime law. Plaintiff made claims against Defendant Y & S, alleging that his injuries (neck, back, wrist and arm) were caused by the negligence of Y & S and/or the unseaworthiness of the M/V ANITA D. Plaintiff seeks maintenance and cure benefits from Defendant Y & S Marine and attorney fees and costs in the event that Defendant refuses to pay or discontinues such maintenance. Plaintiff has dismissed Y & S Marine, Inc., as party with regard to all other claims except for maintenance and cure benefits. The allegations waged by

Plaintiff derive from the December 5, 2005 allision involving the L/B Superior Goal and the stationary M/V Anita D which occurred on December 5, 2005.

Defendant Y & S employed Plaintiff Marcus Raffield from November 30, 2005 through February 2006. During his employment, Plaintiff served as a captain and member of the crew of the M/V Anita D, which was owned and operated by Defendant, Y & S Marine, Inc. On December 5, 2005 Plaintiff was aboard the M/V Anita D as a passenger in training. The M/V Anita D was under the control of Captain James Sylve. Ordinarily, Plaintiff piloted the M/V Miss Kristen, but above average wind conditions did not permit its operation on that day.

The M/V Anita D was docked to a material barge in Lonesome Bayou due to extremely high winds and poor weather conditions, which made navigation of the vessel too dangerous. The L/B Superior Goal radioed the M/V Anita D, asking that the vessel move to an adjacent barge so that the Superior Goal could access the material barge where the M/V Anita D was docked. Despite the severe weather conditions, Captain James Sylve complied with the request and docked the M/V Anita D at another material barge.

While the L/B Superior Goal was attempting to access the material barge, it allided into the M/V Anita D, causing substantial damage to the vessel and allegedly injuring crew members, including Plaintiff. Just as the L/B Superior Goal

allided with the M/V Anita D, Plaintiff was warning the crew of the impending allision. On the day after the vessel crash, Plaintiff was brought to shore and was finally given permission by Trae Scobel of Y & S Marine Inc. to seek medical attention for the injuries sustained in the accident. Plaintiff alleges that his neck, back, arm and wrist was injured as a result of the allision.

Plaintiff contends that Trae Scobel of Y & S Marine Inc., refused to authorize an MRI when Plaintiff was examined by Dr. Howard A. Nelson, Jr. Dr. Nelson subsequently released Plaintiff for work at Y & S Marine, Inc. Plaintiff signed an incident report form and returned to work on December 14, 2005 instead of taking time off with no pay. However, Plaintiff also returned to Dr. Nelson with complaints of pain. Again, Dr. Nelson noted that Plaintiff needed to have an MRI performed, but permitted his return to work. Soon thereafter in February 2006, Plaintiff resigned from Y&S Marine, Inc.

Plaintiff unsuccessfully applied for employment as a Captain with Atlas Boat, Inc., where he failed the physical examination. Dr. Wei reported to Atlas that Plaintiff was determined to be non-fit for duty due to a lesion seen on Plaintiff's lumbar spine x-ray at L5.

Plaintiff began working for Wood Resources, L.L.C. as a boat Captain on February 27, 2006. He was dismissed by Wood on March

9, 2006 for not having the proper licensing requirements to operate their vehicles.

After leaving the employment of Wood Resources, L.L.C., Plaintiff gained employment as a boat Captain with Abe’s Boat Rental, Inc. Plaintiff worked for Abe’s from March 2006 to August 2006.

On September 6 2006, Plaintiff unsuccessfully applied for employment as a Captain with Delta Towing, L.L.C. where he failed the physical examination, as Dr. Watkins noted lumbar spine problems at L-5, T-12, and L-3. Dr. Watkins also noted that Plaintiff needed an orthopedic evaluation. Plaintiff sought the medical advice of Dr. Gregory Stewart, which resulted in normal findings with no restrictions to work as of September 13, 2006.

On October 6, 2006 shortly after receiving his release from work from Dr. Stewart, the United States Environmental Services (“USES”) hired Plaintiff. However, on November 6, 2006, Defendant contends Plaintiff was terminated from his employment with USES for threatening the facility staff. On December 4, 2006 Plaintiff filed a lawsuit against Y & S Marine, Inc. and Superior Energy Services for alleged injuries arising out of the allision December 5, 2005 between the L/B Superior Goal and the M/V Anita D.

On December 28, 2006, Plaintiff visited Neurological Surgeon, Bradley Bartholomew who conducted an MRI and noted a

herniated disc, among other related problems. He recommended an EMG and nerve condition studies relating to Plaintiff's upper extremities. On February 28, 2007, Plaintiff underwent and EMG with Dr. Daniel Trahant, which resulted in Plaintiff's March 28, 2007 two level anterior fusion at C4-5 and C5-6. Despite notable improvement since surgery, Plaintiff still faces a laminectomy. At a June 28, 2007 follow up, Dr. Bartholomew recommended a laminectomy at L3-4 and L4-5. Despite the recommendations and receipt of various treatment, Y&S Marine, Inc. has refused to provide maintenance since December 5, 2005.

Plaintiff moves to sever and set trial of the maintenance and cure benefits claim on an expedited basis because Plaintiff claims he is in dire circumstances. If denied the expedited trial on his maintenance and cure claims, Plaintiff claims that he will be unable to complete his treatment and rehabilitation and therefore will be unable to present all of the medical evidence necessary at the trial of the Jones Act and general maritime law negligence claims. He further alleges that this could impact calculations of his future physical and vocational limitations, as well as economic losses. In addition, Plaintiff asserts that this trial does not involve extensive testimony on how the accident happened, nor does it require liability, economic or vocational experts.

Defendant Superior contends that since Plaintiff has had

extensive post-accident employment as a vessel captain, some of the physicians involved may provide testimony regarding intervening injuries suffered by Plaintiff. In addition, Superior calls into question recommendations made by Dr. Bartholomew because of the contingency fee agreement for the payment of Plaintiff’s medical expenses. Superior also highlights the close proximity to the March 24, 2008 jury trial, points to discovery remaining outstanding, and emphasizes Plaintiff’s delay in filing the motion to sever as late as September 11, 2007. Superior notes that granting Plaintiff’s motion to sever would constitute litigation of Superior’s rights in Superior’s absence, as trying Plaintiff’s maintenance and cure claims on an expedited basis would preclude Superior from being able to contest the medical causation of Plaintiff’s injuries and the medical necessity of Plaintiff’s treatment. Superior concludes by noting that the issue of medical causation would be argued twice and result in the duplication of expert testimony and an increase in expense.

Defendant Y&S Marine, Inc. contends that since Plaintiff has already received other treatment on contingency fee basis, Plaintiff should undergo surgery in the same manner. Y&S argues that Plaintiff was deemed to be fit for work on three occasions, and because the purpose of maintenance and cure is to provide a sick or injured seaman with sustenance and medical care during

his convalescence there is no reason to provide a seaman who is medically fit for regular duties with sustenance already provided by his employment to receive maintenance and cure benefits from Y&S. This argument is appropriate for consideration of the maintenance and cure claim, not the motion for severance and expedited trial presently before the Court. With a March 24, 2008 jury trial date and the need to undertake extensive discovery, Y&S argues that case law does not support severance. In addition, Y&S contends that the same experts would have to testify in both trials and the opposition to the motion to sever, as well as, the delayed filing of such a motion should lead to the denial of Plaintiff's Motion to Sever.

***DISCUSSION***

**A. Entitlement to Maintenance and Cure Benefits**

A seaman who becomes sick or injured while in service to a vessel has a common right to maintenance payment to cover the cost of his food and lodging. *Vaughan v. Atkinson,* 369 U.S. 527, 531 (1962). Under these circumstances, a seaman is also entitled to cure - the cost of medical treatment. *Guevara v. Maintenance Overseas Corporation,* 59 F.3d 1496, 1499 (5th Cir. 1995). The entitlement to maintenance and cure benefits lasts until seamen reach the point of maximum medical improvement. *Lodrigue v. Delta Towing, L.L.C.,* 2003 WL 22999425 (E.D. La.)(Vance, J.), citing *Breese v. AWI*, Inc., 823 F.2d 100, 104 (5th Cir. 1987).

A Jones Act seaman has a right to join his/her maintenance

and cure claims with other general maritime claims; he/she may separately sue for maintenance and cure; or having already filed suit, may request "severance of the maintenance (and cure) claim and an expedited trial by the court." *Martinez,* 2001 WL 6726 (E.D. La.)(Vance, J.), citing *Tate v. American Tugs, Inc*. 634 F.2d 869 (5th Cir. 1981). The decision to sever a maintenance and cure claim is within the court's discretion. The factors that guide the Court's consideration of whether or not to sever include: Plaintiff's interest in an expediting trial of these issues, the proximity of the scheduled trial date, whether Plaintiff has requested a jury trial, and whether the nonmoving party opposes the motion. *Marine Drilling Management Co. v. Scott,* 2003 WL 133218 (E.D. La. 2003)citing *Hampton v. Daybrook Fisheries, Inc.*, 2002 WL 1974107 (E.D. La 2002).

Based on these factors, the Plaintiff's Motion to Sever is **DENIED**. While Plaintiff has an interest in an expedited trial to determine his entitlement to cure benefits, namely additional surgery, a March 24, 2008 jury trial is scheduled. In *Hampton v. Daybrook*, the court held severance was not warranted when a jury trial was scheduled to take place in three months, and unlikely to change materially the outcome of seaman's surgery considering the lapse of time since the injury. 2002 WL 1974107 (E.D. La 2002). In addition, Both Y&S and Superior oppose severance, which also cuts against the grant of severance. The medical

expert testimony used in the maintenance and cure trial would prove duplicative to the trial against Superior. In addition, the need for discovery also supports the denial of the motion to sever. *Charpentier v. Blue Streak Offshore, Inc.*, 1996 U.S. Dist. LEXIS 9813, *4 (E. D. La 1996)("a separate hearing on the issue of maintenance and cure is not merited when the trial date is in the near future and discovery is wanting.").

For the aforementioned reasons, Plaintiff's Motion to Sever for Expedited Trial to Determine Plaintiff's Right to Cure Benefits is **DENIED.**

New Orleans, Louisiana this 3rd day of January, 2008.

IVAN L. R. LEMELLE

UNITED STATES DISTRICT JUDGE